case number 19-3088 United States of America for Gregory C. Cook appellant Mr. Zucker for the appellant Mr. Hansford for the appellate. Mr. Zucker is now on mute. Good morning Mr. Zucker. Morning judge may I begin? Sure please. Okay morning may it please the court John Zucker on behalf of the appellant. Five minutes for rebuttal please. The issue here before us is a recurring one in in drug cases and it almost doesn't matter whether it's a possession with intent to distribute or a conspiracy both of which work at play in this case and the issue is comes about frequently in cases where the evidence is all circumstantial and yet the the issue that is recurring is where do we draw the line between justifiable inferences and speculation and that's what this case comes down to as have many of the other case. Now there's no direct evidence that Mr. Cook ever possessed any cocaine or heroin or any of the other contraband in this case. There's no evidence that he ever distributed any and there's no overt evidence or direct evidence that he conspired with the commit this offense. The government is essentially trying to cobble together a bunch of disparate pieces of circumstantial evidence connecting him with the co-defendant and hoping that the amalgamation of all that circumstantial evidence creates a creates sufficient evidence from which the inference that they seek to be what they're relying on here is essentially a lot of disparate evidence and that is speculative to confer or to infer in this case as with all due respect to Judge Goldsberg as he did that Mr. Cook was part of this conspiracy or that he had the ability to exercise the meaning and control over the drugs that were never in his possession. The fact that our case law that there's no difference between direct and circumstantial evidence is but that's not the law or that no that's no and then that no no that's clearly the law that's clearly the law. A case can be based on circumstantial evidence and circumstantial evidence is entitled to the weight that the evidence warrants based on what the circumstances are but in this case there was no evidence I mean the judge said that the most logical inference is that in response to the call Mr. Cook collected the drugs and the guns and the cash inside the apartment put them into a pack and had the the minor child leave with them well that's possible it's possible that did occur but there's no evidence supporting that proposition that that in fact is what occurred the child was never called there's no indication that Cook ever touched anything in the bag there was no physical evidence connecting him with the bag it is in this case pure speculation to believe that is what sure there was a Pinkerton instruction given with respect to all three of the possession was intent to distribute counts and you don't challenge that instruction that was certainly not part of our brief I don't I frankly do not even recall that at this point I might take your word for it but I don't recall yeah it was it's it's at the 688 and 89 of the of the separate appendix so if if indeed we disagree with you and hold that there was sufficient evidence of a conspiracy doesn't that mean necessarily that there was sufficient evidence for the three possession with intent to distribute counts if there was a sufficient basis to confer to conclude there was a conspiracy does that if so fact I mean that he's guilty of the possession with intent to distribute I mean I guess I guess it would determine what the what the scope of that conspiracy was as a practical matter I don't considering that there was no evidence that there was any agreement between them the the agreement is all being inferred from conduct well what I'm saying is is that the jury was instructed that they could find possession with intent to distribute based on the Pinkerton theory and which is that that each member of the conspiracy is responsible for crimes committed by the other members as long as those crimes were committed to help further or achieve the objective of the as a necessary or natural consequence of the agreement that's at SA 688 in the similar language appears on the verdict form for the possession counts well particularly for the possession count for the cocaine possession with intent to distribute cocaine base of 28 grams or more and so what I'm saying to you is that the jury had before it the Pinkerton theory and if we find that the evidence of conspiracy was sufficient then that's necessarily isn't necessarily sufficient then for for the possession with intent to distribute is there some argument that it wouldn't be and I did it in your briefs I guess my response off the top of my head is it would depend what you found the conspiratorial agreement was if you found the for instance the conspiratorial agreement applied to that only which was within the backpack then that would exclude the possession of the tentative tribute for the drugs that were made in the house that were not placed in the backpack did that answer the question well I'm not sure sure that it did but I don't want to monopolize the time further with it but I suggest that there is simply no evidence to indicate that mr. cook exercised a minion of control over any of the contraband in this case that was recovered and that was the basis for these charges and I think what we what we have here is analogous to the situation in Ziegler where at the close of the government's case there was not sufficient evidence and and it should have never gone to the jury but that evidentiary gap was filled in and certainly the government is allowed to rely upon evidence that is the strip that is introduced by the defense but in this case I think what happened is very similar to what happened in the Ziegler case where the defendant put on a defense that was not credited and the jury drew adverse inferences to fill in the gaps in the government's case because they did not credit the co-defendant witness who was clearly trying to exculpate mr. cook as she had done from the beginning when the case first came in and at the preliminary hearing she went to the prosecutor and said he didn't have anything to do with it the drugs are all mine and she testifies that throughout it was clear the jury didn't credit her on that but that's where the negative I'm sorry the missing gaps in the evidence came from the impermissible drawing of negative of adverse inference my time is up you're into your rebuttal time so if my colleagues have no further questions we'll hear from the government good morning your honor and may it please the court Eric Hansford for the United States we think appellants arguments here ignore two basic requirements of sufficiency review first you must view the evidence in the light most favorable to the government and second you have to look at all of the evidence in the case not the evidence piece by piece and the evidence as a whole here does strongly support a conclusion that the defendant was working together with rice to distribute drugs you've got the phone call when rice is stopped by the police where the person who she decides to call at that point is the defendant and then the defendant seems to help Dante her son get out of the apartment with a backpack full of drugs and money and then lies to the police afterwards moments later when they ask about the child's whereabouts and you've got the recorded jail phone call where the defendant is discussing knowledge about the case that only an insider would know and then you've also got the fact that there's a bag of evidence recovered at the Waldorf house which is a drug encrusted Pyrex that's the defendant's house in Waldorf a drug encrusted Pyrex Cornelia Rice's old-school bus driver ID and a commercial money counter and related to the commercial money counter you've got unexplained wealth of the defendant particularly thousands of dollars of unexplained cash deposits and there's reason to think that's linked to the apartment given that his ATM card for that account is found in the apartment and the he's using the ATM that's closest to the apartment and then you've got his general ties to this apartment where there's drugs out in the open he's got a key he's free to come and go and so based on all of that we do think there's sufficient evidence here we think it's similar in many ways to the evidence that this court went through in or the types of evidence that this court went through in Gaskins that's typical in a drug conspiracy that was found lacking in Gaskins but is present here we think it's similar in many ways to the evidence found sufficient in Childress in terms of circumstantial evidence of course circumstantial evidence is just as valid as direct evidence the jury was instructed as to that we do think there's direct evidence in this case in the bag of contraband found in the Waldorf house but even if that is all considered circumstantial evidence we do think that's just as valid and then just on the back can you name a case where we or any court has found sufficient evidence of a conspiracy or a person who was never found in possession of any drugs themselves and never participated in there's no evidence that they participated in a transaction themselves I I think that may map on to the Childress case certainly the defendant there was not found in possession of any drugs I I do not recall at this point if I she may have acted as a go-between in that case so I I don't have case maybe exactly on on those facts but I think that it is reasonable to infer that the defendant here was in possession of the drugs that were in the backpack and so you can draw circumstantially whether or not there's direct evidence of that you can find circumstantially that he was in guilty of possession was to distribute 28 grams or more we have to either hold him accountable for the 14 plus grams that were in miss Rice's bra or the cocaine cookie that was underneath a dumbbell in the bedroom and not in plain view well I I think there's all of the I believe there was more than there was something like 32 grams of crack cocaine found in the in the backpack itself so there was more than 28 grams in the backpack I believe that's correct I would also just in I'm thinking based on your prior question yeah I think there were 34 grams in the backpack but based on your prior question the Supreme Court's decision in Ocasio said that in a drug conspiracy case it's dicta but the in a drug conspiracy case there need not be direct evidence or there need not be evidence that the defendant ever agreed to distribute drugs it's enough if he was storing the drugs so I think that is a situation where the court is recognizing that in a conspiracy in order to be convicted based on a conspiracy you need you don't need to actually take all of the steps of the crime and I think that is what we have here and just in terms of the backpack and what Judge Boasberg said about the backpack whether or not the defendant is actually the one who packed up the backpack is not the relevant question the question is whether he is helping Dante escape with the backpack full of drugs and understanding what's in there and we do think there's circumstantial evidence of that given that he's shortly before Dante emerges poking out his head and noticing the police and then right after Dante has left he's lying to the police about Dante's whereabouts suppose we're concerned about a situation where you could have you know someone who is a roommate of or a housemate of a drug dealer and they know that that's what's going on they have no no involvement in it but you know that's that's where they live and they're for whatever reason stuck living there they've got a key they come and go they have an association with the drug dealer what if we're concerned about opening the possibility of liability for conspiracy for people like that I think it's clear under this court's case law that that would not be enough simply knowing or being in the presence of drugs would not be enough to convict someone of conspiracy I think that the jury was appropriately instructed that simply being in the near presence of the drugs was not enough to find the defendant guilty of possessing the drugs and so but I think that's ultimately in many of those cases like that in that scenario so if if you have that situation and the roommate gets a call from the drug dealer saying you know I'm with the police and and they say oh you're with the police okay well I'll come check on you and then the drug dealers son or accomplice hears that and decides to leave with drugs you know you would say we would infer that they caused them to leave leave with the drugs or that that shows that they're part of the conspiracy even if they could be leaving because they know that there's drugs in the house that they and if the police might come there they need to get them out of the house I I don't think we would we certainly would not say that I think we would say it's a jury question what the defendant is thinking at that point but we would not say that someone the innocent roommate who gets a call and is told to leave who knows about the drugs well you would happen like most favorable to the government you can infer that there that they that they told the person to leave because they're part of the conspiracy well where it no I mean I think that the evidence here that that is what the defendant was doing is stronger because shortly before he peeks out the door and looks for the police take special note of the police and then right afterwards lies to the police about where the child has gone plus there's all of this other evidence but I I think that's it is because he knows that they took drugs with him and you know he doesn't want the kid to get in trouble and end up in jury arguments to be made and I think they were made in this case but I think once the jury has made the decision has rejected that that is what the defendant's doing and has found instead that what the defendant is doing is intentionally helping because he has agreed to help distribute the drugs and possess with intent to the distribute I think on appeal this court has to defer to that finding of the jury on that sort of factual scenario I I fully agree that there is a triable jury question in that case it's just not a situation where on that evidence you'd be overturning it on appeal and so if there are no further questions we would ask this court to affirm thank you may I proceed judge yes okay turn first to the children's case I think with all due deference to the prosecutor his recollection is somewhat mistaken in Childress it was one of that was the Ray Phil Edmonds case and it was one of the relatives also named Edmonds who that issue came up and the evidence showed in that case that not afterwards but during the course of the conspiracy there were recorded calls where that person was discussing drugs avoiding the police introducing couriers accepting money when her when her significant other boyfriend wasn't around who was the principal there was much more than there is in this case so I think that case points exactly in favor of the defense that because the conversation after the fact was was after the fact it was in and it's unfair to hold it against the defendant that because he knows of the activities of the principal of miss Rice therefore he has to be inferred and it's reasonable or has to be inferred that he is a participant there simply is no basis to draw that conclusion regarding the cash deposits the amounts involved in this case were not I mean the pattern that the officer testified to is that before the mortgage payment of 900 change was due there were frequently cash deposits to cover that mortgage I would say that that in and of itself does not establish is not consistent with the type of cash that we see in a drug distribution ring it's something somebody who's dealing with cash as the officers acknowledged there are people who do regarding the and the government places great reliance on this claim that mr. went to the door prior to Dante's leaving interestingly whatever occurred at the door the officer didn't think it was significant enough to note or broadcast about until after the arrest of mr. Cook and the officer sitting next to him contradicted has she to contradicted who had the same view he says from where we were seeing the door was closed we couldn't see the person's face the lighting wasn't good enough so I say the court should have some concern about the exaggerations with the other officer regarding the evidence that is recovered from Waldorf I'm not sure how far that gets us it's a it's a house in Waldorf defendant owned the house but his brother lived there and his brother had a record and his brother they found his brothers in court Bureau of Prisons identification there it's clear that mr. Cook couldn't have been there for at least a week because he was incarcerated so how is he how is what's there attributable to him when he hasn't been there there's no evidence when he was there last there's no evidence linking him to any of the contraband that was recovered the contraband that was recovered had miss Rice's ID in it and she says that she was being evicted so she had personal property removed and stored it at mr. Cook's house I see my time is up are there any other questions I don't think so I don't hear any mr. Zucker you were appointed by the court to represent mr. Cook and we are grateful to you for your assistance thank you but thank you both the case is submitted
judges: Tatel, Garland, Wilkins